**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JACQUELYN G.,

               Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

             Defendant.

Case No. 22 C 5917

Magistrate Judge Sunil R. Harjani

---

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Jacquelyn G.[1] seeks to overturn the Commissioner of Social Security Administration's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. Jacquelyn requests reversal and remand [20], and the Acting Commissioner moves for summary judgment affirming the decision [26][27]. For the reasons discussed below, the Court affirms the ALJ's decision.

**Background**

Jacquelyn, currently 39 years old, filed a DIB application on October 5, 2020, and an SSI application on November 24, 2020, alleging an onset date of July 1, 2020. R. 13, 24. Jacquelyn completed high school in 2002 and cosmetology school in 2016. *Id.* at 224. She previously worked as a receptionist and stylist. *Id.* Jacquelyn alleged disability due to severe anxiety, depression, post-traumatic stress disorder (PTSD), obesity, the autoimmune disorder Hashimoto's thyroiditis,

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by first name and the first initial of last name or alternatively, by first name.

and migraines. *Id.* at 15-18, 223; Doc. [20] at 1. Treatment included therapy and various prescription medications. R. 15-24.

Jacquelyn's claims were initially denied on February 10, 2021, and upon reconsideration on June 14, 2021. *Id.* at 13. Upon written request, on February 28, 2022, the ALJ held a telephonic hearing, attended by Jacquelyn, counsel, and vocational expert ("VE") John Pullman. *Id.* at 13, 31. On May 2, 2022, the ALJ found Jacquelyn not disabled. *Id.* at 13-26. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ found Jacquelyn had the following severe impairments: anxiety, depression, PTSD, obesity, and migraines. *Id.* at 15-16. The ALJ also noted the objective medical record documented Hashimoto's thyroiditis with positive TPO antibody/hypothyroidism. *Id.* However, as outlined in the ALJ's opinion, this condition was "successfully treated, controlled, stabilized," and managed with medication. *Id.* at 16. The ALJ concluded Jacquelyn did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* at 16-18. The ALJ specifically considered listings 11.00D2, 11.00G3a, 11.00G3b(i)(ii)(iii)(iv) for neurological impairments and migraines, as well as 12.04, 12.06, and 12.15 for mental impairments. *Id.* at 16-17. Under the "Paragraph B" analysis, the ALJ found Jacquelyn had moderate limitations in interacting with others, and concentrating, persisting or maintaining pace. *Id.* at 17-18. The ALJ found mild limitations in understanding, remembering, or applying information, and adapting or managing oneself. *Id.*

The ALJ determined Jacquelyn had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) with the following limitations: (1) occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (2) occasionally stoop and crouch; (3) frequently balance, kneel, and crawl; and (4) tolerate occasional exposure to unprotected heights, dangerous heavy

moving machinery, bright flashing lights, and very loud noise. For the mental aspects of the RFC, the ALJ found that Jacquelyn can: (1) understand, remember, and carry out simple, routine instructions; (2) use judgment limited to simple work-related decisions; (3) tolerate frequent interaction with supervisors and coworkers; and (4) tolerate occasional interaction with the public. *Id.* at 18. After posing hypotheticals to the VE, the ALJ concluded Jacquelyn could perform medium work with the required limitations, including as a linen room attendant, laundry worker I, and laundry laborer. *Id.* at 25-26, 58-63. As a result, the ALJ found Jacquelyn not disabled. *Id.* at 26. The Appeals Council denied Jacquelyn's request for review. *Id.* at 1-3.

### Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform their former occupation; and (5) whether the claimant is unable to perform any other available work in light of their age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Jacquelyn argues the ALJ: (1) did not adequately account for certain limitations in the RFC; and (2) failed to properly evaluate the medical opinion evidence. Having considered these arguments and the record, the Court finds that the ALJ did not commit reversible error as the ALJ's decision is supported by substantial evidence.

### I.   RFC Assessment

For her first contention, Jacquelyn argues that the RFC is not properly constructed because the ALJ did not adequately account for: (1) migraine limitations in the RFC; and (2) mental functioning limitations in the RFC. Doc. [20] at 6-14; Doc. [29] at 3. The Court disagrees.

In way of background, the ALJ determined Jacquelyn had the RFC to perform medium work except the claimant can: (1) occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (2) occasionally stoop and crouch; (3) frequently balance, kneel, and crawl; and (4) tolerate occasional exposure to unprotected heights, dangerous heavy moving machinery, bright flashing lights, and very loud noise. R. 18-24. For the mental aspects of the RFC, the ALJ found that

Jacquelyn can: (1) understand, remember, and carry out simple, routine instructions; (2) use judgment limited to simple work-related decisions; (3) tolerate frequent interaction with supervisors and coworkers; and (4) tolerate occasional interaction with the public. *Id.*

The RFC is the most physical and mental work that Jacquelyn can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). An ALJ assesses an RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). In reaching their RFC assessment, the ALJ must "articulate at some minimal level [their] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. An ALJ has the "final responsibility" for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2); *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). Additionally, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). "[An] ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023). Instead, an ALJ must minimally articulate their reasoning. *Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'").

## A. Migraine RFC Limitations

Jacquelyn asserts that the ALJ failed to factor into the RFC how her migraines would affect her mental functioning. Doc. [20] at 6-9; Doc. [29] at 3. Specifically, Jacquelyn argues: (1) her

migraines limited her ability to sustain the attendance and on-task requirements of full-time work; (2) the ALJ cherry-picked and mischaracterized evidence; and (3) the ALJ improperly played doctor. *Id.*

The Court begins by addressing the issue of Jacquelyn's migraines on the attendance and on-task requirements of full-time work. Doc. [20] at 6-8.[2]  As detailed above, an ALJ need only incorporate supported limitations into an RFC assessment. *McCorkle v. Kijakazi*, 2023 WL 179983, at *3 (7th Cir. 2023) (affirming the ALJ's decision not to incorporate migraine-related limitations regarding absenteeism and off-task time in the RFC).  Moreover, when assessing impairment-related symptoms, including headaches, the ALJ reviews if the symptoms are consistent with, and supported by, the record. *See* SSR 19-4p, 2019 WL 4169635, at *8 (Aug. 26, 2019).   Here, the ALJ included both physical and mental RFC limitations based on Jacquelyn's migraines.   Jacquelyn concedes that the ALJ included physical RFC limitations for her migraines. Doc. [20] at 6-7[3]; R. 18-24 (the ALJ found Jacquelyn's migraines supported physical RFC limitations of: (1) medium exertion level; (2) environmental limitations of occasional exposure to bright flashing lights and very loud noises to prevent aggravation and migraine triggers; and (3) hazard limitations of occasional exposure to unprotected heights and dangerous heavy moving machinery to account for potential dizziness, vertigo, fatigue, and medication side effects).

---

[2]  Jacquelyn cites to *Skarbek v. Barnhart* for the notion that because the ALJ expressed skepticism about telehealth treatment records, they should have ordered a consultative examination or sought testimony from a medical expert to cure any perceived gaps. 390 F.3d 500, 504 (7th Cir. 2004); Doc. [20] at 7-8.  However, as *Skarbek* holds, an ALJ is not required to recontact a doctor for additional evidence or medical expert testimony, unless the evidence is inadequate to determine whether the claimant is disabled. 390 F.3d at 504. As in *Skarbek*, the evidence here was adequate for the ALJ to find Jacquelyn not disabled, and the ALJ acted within their discretion in deciding not to obtain further evidence. *Id.*

[3] Jacquelyn clarifies that she is not arguing her migraines should have resulted in listing level severity. Doc. [20] at 7.  Instead, Jacquelyn contends that the ALJ should have "considered [her migraines'] exacerbatory impact on her mental functioning when determining [the] RFC, and failed to do so." *Id.*  As outlined in this paragraph, the ALJ considered the impact of Jacquelyn's migraines on her mental functioning when crafting the RFC.

Instead, Jacquelyn argues the ALJ did not include mental RFC limitations for her migraines. Doc. [20] at 7-8. The factual evidence belies this argument. The ALJ weighed Jaquelyn's mental impairments and found she could: (1) understand, remember, and carry out simple, routine instructions; (2) use judgment limited to simple work-related decisions; (3) tolerate frequent interaction with supervisors and co-workers; and (4) tolerate occasional interaction with the general public. R. 18. In determining these findings, the ALJ initially reviewed the listings and observed Jacquelyn did not meet the extreme neurological listings. R. 16. Next, the ALJ considered Jacquelyn's neurological limitations within the Paragraph B analysis. *Id.* at 16-18. The ALJ weighed Jacquelyn's issues with memory, focus, concentration, attention, and functioning. *Id.* at 17-18. The ALJ contrasted Jacquelyn's brain fog, memory loss, difficulty paying attention, finishing tasks, and following instructions (*id*. at 17 (*citing* 230-37)) with Jacquelyn's normal or good memory, ability to ask questions, research her conditions, manage finances, drive, shop, and care for her daughter (*id.* (*citing* 230-37, 341, 409, 411, 412-13, 487)). Then, the ALJ reviewed Jacquelyn's testimony regarding her migraines and alleged limitations, including that her migraines were frequent (sometimes 3-4 times a week) and painful, leaving her unable to function. *Id.* at 19. The ALJ found the intensity, persistence, and limiting effects of Jacquelyn's migraine symptoms inconsistent with the medical record evidence. *Id.* The ALJ observed that Jacquelyn experienced migraines without aura,[4] status migrainosus, and not intractable.[5] *Id.* at 20 (*citing*

---

[4] An aura is a subjective symptom at the onset of a migraine headache. It refers to any number of sensory disturbances, including dots, sparks or zigzags in your vision. Some individuals experience tinnitus, dizziness or even the inability to speak clearly. *See* "Migraine Aura," Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/22131-migraine-aura (last visited Dec. 28, 2023); *see also* STEDMANS MEDICAL DICTIONARY § 86100, Westlaw (database updated November 2014).

[5] Status migrainosus or an intractable migraine is a migraine attack that lasts longer than 72 hours and does not respond to usual treatment. *See* "What is status migrainosus?", American Migraine Foundation, https://americanmigrainefoundation.org/resource-library/what-is-status-migrainosus/#:~:text=Status%20migrainosus%20is%20a%20headache,a%20visit%20to%20the%20hospit

413).  The ALJ also remarked that Jacquelyn's treatment had been routine and conservative, with a two-and-a-half-year delay in seeking a follow up from Dr. Paul Grindstaff, the treating neurologist. *Id.* at 20 (*citing* 400, 413, 455).  The ALJ compared that there was no brain imaging available, although an MRI was ordered recently (*id.* (*citing* 445)), reports that Jacquelyn's daily headaches waxed and waned, were resolved, and had some relief with medication (*id.* (*citing* 329, 400, 414[6])), with records indicating Jacquelyn's headaches remained unpredictable, daily, and variable, and that medication did not relieve her symptoms (*id.* (*citing* 341, 343, 412-13).  The ALJ concluded that, taken together, the record evidence supported the mental RFC limitations outlined. This case is analogous with *McCorkle v. Kijakazi* where the Court held that the ALJ supported their decision not to include migraine-related limitations of absenteeism and off-task time because ALJ connected the RFC assessment to the record evidence. 2023 WL 179983, at *3.  As in *McCorkle*, the ALJ supplied a logical bridge, and the Court will not reweigh evidence. *Id.*; *Reynolds*, 25 F.4th at 473.  The evidence analysis undergone by the ALJ detailed above meets the standard for minimal articulation, and the Court can trace the ALJ's reasoning.

Jacquelyn also argues the ALJ cherry-picked and mischaracterized evidence in coming to the migraine RFC determination.[7] Doc. [20] at 8-9.  While an ALJ may not ignore an entire line

---

al (last visited Dec. 28, 2023); *see also* "Intractable Migraine," National Headache Foundation, https://headaches.org/resources/intractable-migraine/#:~:text=Intractable%20migraine%2C%20also%20referred%20to,to%20usual%20therapies%20for%20migraine (last visited Dec. 28, 2023).

[6] Jacquelyn later takes issue with the ALJ's analysis of medical evidence, alleging that the "ALJ omits essential dire findings" including that "[n]owhere does [the ALJ] mention the extent of the findings indicated in a treatment note from August 18, 2020." Doc. [20] at 9 (*citing* R. 20, 414).  This is incorrect. In reviewing Jacquelyn's medical history and migraine symptoms, the ALJ specifically cites the August 18, 2020, visit where Jacquelyn "reported her headaches as chronic but stated they occurred intermittently and had been 'waxing and waning.'" R. 20 (*citing* 414).  The ALJ did not omit evidence but considered it wholistically and it is not for this Court to reweigh the evidence. *Reynolds*, 25 F.4th at 473.

[7] Jacquelyn takes issue with the ALJ's statement that "Plaintiff has been diagnosed with migraine headaches, which seemingly appeared to stem from a head injury after she was hit by a car." Doc. [20] at 8

of evidence that is contrary to their ruling, they are "not required to address every piece of evidence." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Combs*, 69 F.4th at 435; *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document [they] considered, but must only weigh the relevant evidence."). Here, the ALJ delineated evidence for and against Jacquelyn's migraine symptoms. As detailed above, the ALJ reviewed the neurological listings for both the physical and mental RFC limitations, including reviewing the findings within the Paragraph B analysis. *Id.* at 16-18. The ALJ detailed Jacquelyn's mental functioning limitations and difficulty with memory, focus, concentration, attention, and functioning. *Id.* at 17. The ALJ contrasted these issues with evidence of Jacquelyn's normal or good memory and ability to function. *Id.* (*citing* 230-37, 341, 409, 411, 412-13, 487). Then, the ALJ evaluated Jacquelyn's testimony regarding her frequent painful migraines and alleged limitations, finding that Jacquelyn's symptoms were inconsistent with the medical record evidence. *Id.* at 19. The ALJ considered the conflicting medical evidence regarding Jacquelyn's migraine symptoms, frequency, treatments, if treatments were successful, and to what degree. *Id.* at 20 (*citing* 329, 341, 343, 400, 412-14, 445, 455). The ALJ concluded that this evidence, in conjunction with the other medical evidence, supported the mental RFC limitations outlined. As is often the case with migraine related symptoms, the ALJ considered Jacquelyn's testimony and her subjective symptoms. *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020). That analysis will not be disturbed unless it is "patently wrong." *Id.* (*citing Burmester v. Berryhill*, 920 F.3d 507,

---

(*citing* R. 20). The ALJ cites to a January 10, 2020, visit which states that Jacquelyn has a "history of head injury related to a [motor vehicle accident]." R. 20 (*citing* 417). Jacquelyn argues the ALJ relying on this evidence and evidence prior to the alleged onset date exhibits a "skewed description of the medical record." This is again incorrect. The ALJ is required under 20 C.F.R. § 404.1545(a)(3) to weigh all relevant medical and other evidence through the medical record. Here, as summarized above, the ALJ explained Jacquelyn's numerous different conditions, how these conditions allegedly came about including medical visits prior to the alleged onset, what Jacquelyn stated about her symptoms, and what the medical record exhibited when determining the RFC limitations. R. 16-24.

510 (7th Cir. 2019)). As in *Overton*, the ALJ did not cherry-pick or ignore lines of evidence relating to Jacquelyn's migraines but confronted and weighed the evidence when coming to their RFC determination. *Id.* at 192-93 (affirming RFC without migraine limitations as the medical record and plaintiff's daily activities cast doubt on the alleged severity and impact of plaintiff's migraines). Therefore, the Court does not find reversible error in the ALJ's weighing of the migraine evidence.

In further support, Jacquelyn argues the ALJ played doctor. Doc. [20] at 8-9. However, the ALJ relied on the opinion of the state agency doctors for the physical RFC finding and then crafted a more restrictive mental RFC based on the medical evidence. *Burmester*, 920 F.3d at 510 (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence."); *see also Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument."). The ALJ found the state agency medical consultants persuasive. However, "[s]tate agency psychological consultants Don B. Johnson, Ph.D. and Steven Fritz, Psy.D. found mild limitations in all the 'paragraph B' criteria and found no evidence to establish the presence of the 'paragraph C' criteria." R. 23 (*citing* 66-97, 100-17). The ALJ disagreed finding that there was "sufficient evidence to establish severe mental impairments based upon the additional evidence received as well as the testimony of the claimant." *Id.* The ALJ then explained:

> "[Jacquelyn's] reports of trouble focusing and concentrating and the objective findings of distractibility support the simple routine instructions and simple work related decisions limitations. These also correspond with the moderate limitations in the concentrating, persisting or maintaining pace criterion. [Jacquelyn] can occasionally interact with the general public and can tolerate frequent interaction with supervisors and coworkers secondary to her reports of anxiety, irritability, frustration, and PTSD symptoms. This limitation corresponds with [Jacquelyn's]

moderate limitation in the interacting criterion. No greater degree of limitation has been established by the record."

*Id.* at 24. The ALJ reviewed the medical evidence and placed more restrictions on Jacquelyn's mental RFC to account for her symptoms. The ALJ did not play doctor. It is the ALJ's responsibility to craft the RFC, and the ALJ considered all evidence as required under 20 C.F.R. § 404.1545(a)(3) when determining Jacquelyn's RFC. Thus, Jacquelyn's request for reversal and remand is denied.

### B. Paragraph B RFC Limitations

Jacquelyn next argues that the ALJ did not account for her moderate limitations in interacting with others and concentrating, persisting, or maintaining pace in the RFC assessment. Doc. [20] at 10-14; Doc. [29] at 3.

Jacquelyn starts by asserting that the ALJ did not provide a detailed assessment of her ability to interact with others. Doc. [20] at 10-11. Specifically, Jacquelyn contends that the evidence the ALJ relied on exhibited that she could not function in a full-time work environment.[8] Doc. [20] at 10. This is incorrect. In making the RFC determination, ALJs may not "equat[e] activities of daily living with an ability to work." *Loveless*, 810 F.3d at 508. "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [their] impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022); *see also Rosario A. v. Kijakazi*, 2022 WL 17357435, at *7 (N.D. Ill. Dec. 1, 2022) (upholding ALJ's determination that Plaintiff's daily activities undermined their claim that they could not interact with others). Here, the ALJ examined the evidence and found

---

[8]  Jacquelyn reiterates her meritless position that the ALJ's analysis fails to "factor in the effects of Plaintiff's migraines on her ability to sustain mental functioning and on-task requirements of full-time work." Doc. [20] at 11. As outlined at length in Section I(A) *supra*, the ALJ weighed all relevant medical and other evidence throughout the record in coming to the RFC limitations, which included how Jacquelyn's migraines would affect her ability to function mentally.

that Jacquelyn had a moderate limitation in interacting with others. R. 16-24. As a result, the ALJ held Jacquelyn could frequently interact with supervisors and coworkers and occasionally interact with the public. *Id.* This is more restrictive than the lack of RFC limitations the state agency psychological consultants suggested on initial review and reconsideration. *Id.* at 23 (*citing* 66-97, 100-17); *Burmester*, 920 F.3d at 510 (a more limiting accommodation "illustrat[es] reasoned consideration given to the evidence."). As Jacquelyn concedes, the ALJ relied on Jacquelyn's testimony where she reported becoming "'a bit antisocial' due to limitations and inabilities to participate." Doc. [20] at 10; R. 17 (*citing* 230-37). The ALJ also noted that Jacquelyn testified that she was "not great with bosses," and experienced frustration when unable to perform or understand a task. R. 17. The ALJ stated that Jacquelyn "leaned on her support system" and experienced various moods from euthymic, to sad, anxious and depressed. *Id.* (*citing* 300-02, 316, 346, 411, 413, 425, 487). Even so, the ALJ weighed this testimony against the fact that Jacquelyn has never been fired or laid off from a job due to problems in getting along with others. *Id.* (*citing* 230-37). The ALJ further examined Jacquelyn's mental impairments and the record, noting that Jacquelyn received conservative, routine treatment without psychiatric hospitalizations or intensive outpatient treatment. *Id.* at 20. Instead, Jacquelyn was recommended to and saw a therapist from January to September of 2020 and then later resumed therapy in 2021, which has been helpful. *Id.* at 20-21 (*citing* 294-307, 325, 402, 411, 414, 418, 427-32, 481-88). The ALJ observed that Jacquelyn's daily activities were consistent with the RFC limitations, as Jacquelyn lived with and cared for her daughter and animals, did housework, drove, shopped, bought a new vehicle, and signed up to be a dance instructor. *Id.* at 22 (*citing* 230-37, 300, 302-03, 474). Jacquelyn further argues the ALJ erred in "asserting that Plaintiff's daily activities are consistent with the limitations in the RFC." Doc. [20] at 11-12. Under 20 C.F.R. § 404.1529, an ALJ

12

considers all symptoms, including how the symptoms affect a claimant's activities of daily living and ability to work. *See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) ("[A]n ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities."); *see also Rosario A.*, 2022 WL 17357435, at *7 (affirming ALJ's finding that Plaintiff's daily activities exhibited they could interact with others). The ALJ did not equate Jacquelyn's ability to care for her child, drive, prepare meals, manage finances, shop, play games, watch movies, get her hair done and spend time with friends with the ability to work full-time. R. 16-24. The ALJ considered these activities with the overall record in coming to their conclusions. *Id.* The ALJ analyzed the record wholistically and determined that despite Jacquelyn's moderate limitations in interacting with others, she would be able to maintain full-time work with the mental RFC outlined. *Id.* at 16-24. As the ALJ minimally articulated their reasoning and accounted for Jacquelyn's moderate limitations in interacting with others, there is not reversible error.

Next, Jacquelyn purports the ALJ failed to assess her limitations concentrating, persisting, and maintaining pace. Doc. [20] at 10, 13. An ALJ is "not required to mention every piece of evidence." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document [they] considered, but must only weigh the relevant evidence."). Through an analysis of the record including scrutinizing the medical evidence, Jacquelyn's testimony, and her daily activities, the ALJ concluded that Jacquelyn has trouble focusing and concentrating. R.16-24. Thus, the ALJ found the objective findings of distractibility supported the limitation to simple and routine work. *Id*. at 24. The ALJ also detailed why they included more robust mental functioning limitations, including that

Jacquelyn can understand, remember, and carry out simple, routine instructions, and use judgment limited to simple work-related decisions. *Id*. at 16-24. The ALJ analyzed the Paragraph B analysis and found Jacquelyn had a moderate limitation in concentrating, persisting, and maintaining pace. *Id.* at 17. Again, this is more than the mild limitation the state agency psychological consultants found on initial review and reconsideration. *Id.* at 23 (*citing* 66-97, 100-17); *Burmester*, 920 F.3d at 510. The ALJ explained that Jacquelyn alleged problems paying attention, finishing tasks, and following instructions. R. 17 (*citing* 230-37, 487). However, the ALJ also observed that Jacquelyn could manage finances, shop, drive, had normal memory, concentration, and, at times, distractable attention. *Id.* The ALJ further reviewed the medical evidence around Jacquelyn's mental capabilities. *Id.* at 21-22. The ALJ compared numerous mental status examinations noting that Jacquelyn: (1) was alert and oriented; (2) had normal, euthymic, depressed, or anxious moods and affects; (3) exhibited regular behavior; and (4) displayed normal memory, concentration, judgment, and insight, appropriate thought content with logical, linear, and coherent organization, despite a January 10, 2020, instance of abnormal recent memory. *Id.* at 21-22 (*citing* 297-306, 316, 323-25, 330, 346, 352, 403, 408, 411, 413, 415, 418, 425, 486-87). Further, the ALJ noted that Jacquelyn cared for her daughter and animals, shopped, managed finances, watched movies, and signed up to be a dance instructor. *Id* at 22 (*citing* 230-37, 300, 302-03, 474). Courts have upheld similar mental RFC limitations to assist in accounting for difficulties in concentration. *Dudley v. Berryhill*, 773 F. App'x 838, 842 (affirming mental RFC as a limitation to "work requiring exercise of only simple judgment" accounted for concentration difficulties). Based on the above, the ALJ minimally articulated their reasoning for finding Jacquelyn had moderate limitations in concentrating, persisting, or maintaining pace and limited the RFC to simple and routine work

14

accordingly. The Court can trace the ALJ's reasoning and the ALJ's finding is supported by more than a mere scintilla of evidence.

In additional support of her argument regarding concentration, persistence, and pace, Jacquelyn argues the ALJ was incorrect in limiting her to "simple and routine work." Doc. [20] at 13. While the Seventh Circuit has found that reducing an individual to "simple, routine tasks" can be lacking at capturing limitations of concentration, persistence, or pace, that is not the entire analysis. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010). "A limitation to simple, repetitive tasks may, under appropriate circumstances, adequately translate [to] a rating of moderate limitations in concentrating, persisting, or maintaining pace." *Jeremy S. v. Saul*, 2021 WL 1209130, at *3 (N.D. Ill. Mar. 31, 2021) (*citing Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Burmester*, 920 F.3d at 511; *Dudley*, 773 F. App'x at 842). The Court has held that one such appropriate circumstance occurs when the plaintiff fails to identify further limitations, supported by the record, that should have been included in the RFC. *Jozefyk*, 923 F.3d at 498; *Dudley*, 773 F. App'x at 842. Jacquelyn does not set forth in her briefing any additional RFC limitations that the ALJ should have included. Instead, Jacquelyn simply argues that the ALJ should have been found her symptoms to be work-preclusive. Doc. [20] at 13. As discussed at length above, Jacquelyn's paragraph B RFC limitations were supported by substantial evidence, and more robust than the state agency consultants recommended. In *Jozefyk*, the Seventh Circuit affirmed the ALJ's RFC restrictions of simple, repetitive tasks and limited interactions with others to account for the claimant's moderate concentration, persistence, and pace limitations. 923 F.3d at 498. The Seventh Circuit found that such language was sufficient because the record showed mental limitations occurred only when the claimant was interacting with other, and because there was a lack of testimony and medical

evidence supporting limitations. *Id.* Similarly, the ALJ limited Jacquelyn to medium exertion level with postural limitations due to her migraines and associated symptoms. R. 24. Then to account for Jacquelyn's difficulty concentrating, persisting, and maintaining pace, the ALJ limited Jacquelyn to simple routine instructions and work-related decisions. *Id.* The ALJ tailored Jacquelyn's RFC to the limitations supported by the record, and Jacquelyn has not proposed what further limitations would be appropriate. *Rosario A.*, 2022 WL 17357435, at *6 (*citing Jozefyk*, 923 F.3d at 498); *Jill A. W. v. Kijakazi*, 2022 WL 225879, at *11 (N.D. Ill. Jan. 26, 2022) (upholding ALJ's RFC when plaintiff did not identify specific additional work restrictions that should have been included to account for migraines). Thus, the ALJ did not err in crafting Jacquelyn's concentrating, persisting, and maintaining pace RFC restrictions.

In support of her arguments that the ALJ failed to properly craft an RFC based on her Paragraph B assessment, Jacquelyn again contends the ALJ cherry-picked isolated unremarkable findings. Doc. [20] at 11-13. In particular, Jacquelyn states that the ALJ wrongfully relied on the fact that her headaches waxed and waned. Doc. [20] at 12. This argument also lacks merit. As detailed above, although an ALJ may not ignore an entire line of contrary evidence, they are "not required to mention every piece of evidence." *Terry*, 580 F.3d at 477; *Combs*, 69 F.4th at 435; *Loveless*, 810 F.3d at 507. However, here, the ALJ contrasted numerous mental status examinations and weighed contrasting facts regarding Jacquelyn's moods, affects, behavior, memory, concentration, judgment, insight, and thought content. R. 21-22. In fact, many of the examinations that Jacquelyn argues the ALJ ignored, the ALJ cites and analyzes in their opinion. *Compare* Doc. [20] at 12-13 (*citing* R. 297-98, 300-06, 323-25, 330, 346, 352, 411, 415, 418, 486-87) *with* R. 21-22 (*citing* 297-306, 323-25, 330, 346, 352, 411, 415, 418, 486-87); *see also Booker v. Berryhill*, 2018 WL 1898296, at *3 (N.D. Ill. Apr. 20, 2018) (holding ALJ did not cherry-pick

16

in crafting mental RFC that relied on Plaintiff's physical examinations, the state agency consultants opinion, and activities of daily living including caring for a child). Contrary to Jacquelyn's argument, the ALJ weighed various findings from numerous examinations. It is not for this Court to reweigh the evidence the ALJ considered, but to ask whether the ALJ's decision exhibited a "logical bridge from the evidence to the conclusions." *Reynolds*, 25 F.4th at 473. The ALJ did not ignore an entire line of contrary evidence and built a logical bridge, therefore there is not reversible error.

## II. Medical Opinion Evidence

For her second contention, Jacquelyn challenges the ALJ's evaluation of the medical opinion evidence. Jacquelyn claims the ALJ failed to support their rejection of: (1) Dr. Grindstaff, her treating neurologist; (2) the state agency doctors; and (3) Beth Kubiesa, LCSW, Jacquelyn's treating therapist. Doc. [20] at 14-15; Doc. [29] at 3. The Court finds these arguments too lack merit.

The ALJ's evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. See 20 C.F.R. § 404.1520c(a), (c). While an ALJ must explain how they considered the factors of supportability and consistency in their decision, they are not required to explain how they considered the other

factors. 20 C.F.R. § 404.1520c(b)(2). Additionally, as discussed above, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted*, 923 F.3d at 478.

Jacquelyn initially argues the ALJ's rejection of Dr. Grindstaff's opinion was not supported by substantial evidence and failed to consider the supportability and consistency of Dr. Grindstaff's opinion with the record evidence. Doc. [20] at 14-15; Doc. [29] at 3. An ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record. *Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021) (affirming ALJ's decision to assign little weight the physician's opinion and great weight to the opinions of the agency doctors). As previously articulated, it is not for this Court to reweigh the evidence the ALJ considered. *Reynolds*, 25 F.4th at 473. Here, the ALJ explained that Dr. Grindstaff's opinion was not consistent with his treatment notes and appeared to be based on Jacquelyn's subjective reports. R. 23. The ALJ analyzed Dr. Grindstaff's delayed February 23, 2022 opinion, which stated he saw Jacquelyn yearly as needed for her migraines. *Id.* (*citing* 489-94). The ALJ observed that Dr. Grindstaff reported Jacquelyn would be unable to work due to her migraines, precluded from even basic job activities, unable to focus or concentrate, and often absent. *Id.* The ALJ found this report unpersuasive, as Jacquelyn's medical record showed a routine and conservative treatment. *Id.* at 20, 23. In reviewing Jacquelyn's treatment, the ALJ noted a two-and-a-half-year delay in seeking treatment from Dr. Grindstaff. *Id.* at 20 (*citing* 400, 455). Despite Jacquelyn's complaints of migraines, there was no brain imaging. *Id.* Additionally, Jacquelyn had expressed to providers that her headaches waxed and waned, and that she gained relief from medication. *Id.* (*citing* 329, 414). As discussed above, the ALJ weighed Jacquelyn's memory, focus, concentration, attention, and functioning. *Id.* at 17-18. The ALJ compared Jacquelyn's difficulties in mental functioning due to symptoms, with examinations and daily activities showing instances of normal mental

capabilities. *Id.* at 17 (*citing* 230-37, 341, 409, 411, 412-13, 487). Then, the ALJ reviewed Jacquelyn's testimony regarding her migraines and alleged limitations. *Id.* at 19. The ALJ found the intensity, persistence, and limiting effects of Jacquelyn's migraine symptoms inconsistent with the medical record evidence as Jacquelyn experienced non-intractable migraines without aura, or status migrainosus. *Id.* at 19-20 (*citing* 413). Based on the analysis of the record, the ALJ found substantial evidence to discount Dr. Grindstaff's opinion, and instead relied on the opinions of the state agency consultants.[9] *See Rudicel v. Astrue*, 282 F. App'x 448, 452 (7th Cir. 2008) (affirming the ALJ's decision to give greater weight to the state agency consultant over a physician). Based on the ALJ's reasoning, the Court does not find the ALJ committed reversible error in finding Dr. Grindstaff's opinion report unpersuasive.

Jacquelyn expands her argument by taking issue with the fact that the state agency doctors did not review the opinion of Dr. Grindstaff dated February 23, 2022. Doc. [20] at 14 (*citing* R. 491-93). When there is substantial evidence in the record supporting the ALJ's opinion, they can give more weight to the state agency doctors' opinions over a physician's later opinions. *Rudicel*, 282 F. App'x at 452. Dr. Grindstaff's report was received over a year after the claims were initially denied, eight months after the claims were denied on reconsideration, and eight days before the hearing with the ALJ. R. 13, 489-94. Despite not having the report, the state agency doctors had all the underlying medical records from Dr. Grindstaff when making their findings initially and on reconsideration. *Id.* at 66-97, 100-17. The records submitted to the state agency consultants included Dr. Grindstaff's notes from Jacquelyn's five visits between December 30, 2020, and January 10, 2022. *Id.* at 66-97, 100-17, 400-04 (visit on 12/30/2020), 439-47 (visits on 1/7/2022

---

[9] The ALJ held that the state agency medical consultants Yondell Moore, M.D. and Jennifer Western, M.D. "supported their findings with an explanation and review of the evidence, and their findings are consistent with the evidence of the record." R. 22. Jacquelyn is not challenging the ALJ's reliance on either of these opinions or their findings.

and 1/10/2022), 453-59 (visit on 9/8/2021), 473-74 (visit on 6/16/2021)).  Notably, there are no other visits that Jacquelyn had with Dr. Grindstaff in the record.  In fact, supporting the ALJ's finding of conservative and routine treatment, Jacquelyn had a two-and-a-half-year delay in seeking treatment from Dr. Grindstaff and only visited him five times over the course of thirteen months. *Id.* 20, 400-04, 439-47, 453-59, 473-74.  In *Rudicel*, the Court held that an ALJ could properly discount a treating physician's later opinion when substantial evidence contradicts the opinion. 282 F. App'x at 452.  In that case, as is the case here, there was no new medical evidence to support the physician's late opinion and "substantial evidence support[ed] the ALJ's conclusion that [the provider] must have been relying solely or too heavily on [plaintiff's] subjective complaints." *Id.* at 453; R. 23 (Dr. Grindstaff's opinion "appear[s] to be based upon [Jacquelyn's] subjective reports.").  As discussed, there was substantial evidence that supported the discounting of Dr. Grindstaff's opinion.  Thus, the ALJ did not commit reversible error in relying on the state agency doctors despite them not having Dr. Grindstaff's February 23, 2022, report.

Finally, Jacquelyn challenges the ALJ's analysis of her treating therapist Beth Kubiesa, LCSW.  Doc. [20] at 15.  Jacquelyn's entire argument is that the "treating therapist is consistent with that of the treating neurologist, rendering the ALJ's deference to the non-treating consultants even less tenable."  As this argument has not been properly developed, it is deemed waived. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (perfunctory and underdeveloped arguments are waived).  Even so, the ALJ reviewed the evidence as required, including examinations and opinions from the state agency consultants and Jacquelyn's providers, Jacquelyn's testimony and daily activities, evidence from other individuals in Jacquelyn's life, and the medical record in its entirety. 20 C.F.R. § 404.1529.  This included a detailed discussion of Jacquelyn's mental examinations with Ms. Kubiesa and other providers, comparing treatment notes with symptom

reports and activities of daily living. R. 16-24. The ALJ weighed the opinion evidence and supported their findings with substantial evidence. Thus, reversible error was not committed.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [20], the Acting Commissioner's Motion for Summary Judgment [26][27] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: December 28, 2023

_____
Sunil R. Harjani
United States Magistrate Judge